## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ANDRE BLOSSOM, an individual
RONNIE WYNN, an individual

      Plaintiff,

v.                                        Case No. 8:14-CV-3099-T-17-TBM

THE CITY OF ST. PETERSBURG, a Florida municipal
corporation, and CHARLES HARMON, (as then Chief of Police
for the St. Petersburg Police Department), and JOHN DOE OFFICERS,
as officers of the St. Petersburg Police Department,

      Defendants.

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

This matter comes before the Court pursuant to Defendants', City of St. Petersburg, Charles Harmon, and John Doe Officers, Motion to Dismiss, (Doc. 7), filed January 29, 2015, and Plaintiff's Response in Opposition, (Doc. 8), filed February 9, 2015. For the reasons that follow below, Defendant's Motion is **GRANTED in PART**.

## BACKGROUND

On the evening of September 13, 2010, Andre Blossom and Ronnie Wynn ("Plaintiffs") were visiting a family member's residence in St. Petersburg, Florida. (Doc. 1 at ¶12). Plaintiffs allege, between the hours of six and seven that evening, several men kicked in the residence's door with guns drawn and masks over their faces ordering everyone on the ground. (Doc. 1 at ¶13). The gunmen allegedly kicked, punched, and struck Plaintiffs in the back of the head. (Doc. 1 at ¶¶16, 26). Furthermore, Plaintiffs allege these same gunmen were later identified as "SPPD officers"[1] executing a warrant. (Doc. 1 at ¶16).

---

[1] "SPPD" is used to reference the St. Petersburg Police Department throughout Complaint.

Subsequent to seizure, Mr. Blossom was released from detention and alleges an officer stated Mr. Blossom was "at the wrong place, at the wrong time." (Doc. 1 at ¶17).   Mr. Blossom was never arrested or formally charged for any crimes in connection with the search. (Doc. 1 at ¶18). Additionally, Mr. Wynn, a minor at the time of the incident, was subjected to a search and seizure, and arrested for possession of marijuana. (Doc. 1 at ¶¶25, 27).  Plaintiffs allege "SPPD officers" did not call medical personnel to examine any injuries sustained, and Plaintiffs subsequently sought medical treatment at BayFront Medical Emergency Room.  (Doc. 1 at ¶19, 28).

As it relates to the injuries, Mr. Blossom was allegedly treated for a fractured rib, a 3cm laceration to his head that required sutures, several abrasions, and other injuries.  (Doc. 1 at ¶19). Mr. Blossom also alleges to suffer from severe insomnia, paranoia, and anxiety due to the actions of the SPPD officers. (Doc. 1 at ¶21).   Additionally, Mr. Wynn received physical therapy as a result of the injuries. (Doc. 1 at ¶28).

Plaintiffs allege they took no action that could have been perceived as posing a threat to the SPPD officers. (Doc. 1 at ¶¶21, 29). Moreover, the Plaintiffs allege that the use of excessive force to execute a warrant was unconstitutional and a violation of the Fourth and Fourteenth Amendments of the U.S. Constitution. (Doc. 1 at ¶¶22, 30).  Plaintiff brings this cause of action against Defendants for a violation of 42 U.S.C. § 1983.  (Doc. 1 at ¶34).  Defendants move to dismiss the Plaintiffs Complaint pursuant to Rule 12(b)(6).   (Doc. 7).  Plaintiffs respond in opposition. (Doc. 8).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a Plaintiff's complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief."  A Defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for "failure to

Case No. 8:14-CV-3099-T-17-TBM

state a claim on which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a [Rule] 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide grounds of his [or her] entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (second alteration in original) (citation omitted) (internal quotation marks omitted).

On a Rule 12(b)(6) motion to dismiss, a court must "accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." Alvarez v. Attorney Gen. for Fla., 679 F.3d 1257, 1261 (11th Cir. 2012). Courts follow a two-prong approach when considering a motion to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). If "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," then the claim meets the "plausibility requirement," but it requires "more than a sheer possibility" that the allegations are true. Id. "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned […] accusation." Ashcroft, 556 U.S. at 677 (quoting Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265 (1986)).

## DISCUSSION

This Court must accept the factual allegations as true and construe them in a light most favorable to the Plaintiff.  Alvarez, 679 F.3d at 1261.  Construing the facts in this light, and eliminating the legal conclusions contained in the Amended Complaint, the Plaintiffs have not sufficiently pled factual allegations upon which relief is plausible to survive Defendant's Motion to Dismiss.  Am. Dental Ass'n, 605 F.3d at 1290.

**I.  42 U.S.C. § 1983 Excessive Force Claim.**

**A.  The Parties**

"[O]fficial capacity suits generally represent an action against an entity of which an officer is an agent. . . ."  Brandon v. Holt, 469 U.S. 464, 469 (1985) (quoting Monell v. New York, Department of Social Services, 436 U.S. 658, 690 (1978)); Cf. Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991) (explaining when an officer is sued under Section 1983 in his or her official capacity, the suit is simply "another way of pleading an action against an entity of which an officer is an agent").  "Because suits against a municipal officer in his [or her] official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials because local government units can be sued directly. . . ."  Busby, 931 F.2d at 776.

Here, the Plaintiff's allegations are against the Defendants: "John Doe Officers," Police Chief Charles Harmon, and the City of St. Petersburg.  (Doc. 1).  Further, the Complaint alleges the John Doe Officers were acting in their "official capacity" and under the direction of Police Chief Charles Harmon and the St. Petersburg Police Department.[2] (Doc. 1 at ¶35, 37).  Bringing a suit against John Doe Officers and Chief Harmon is the functional equivalent of bringing a suit

---

[2] It is noted that the Complaint is filed against John Doe Officers of SPPD, but also references the John Doe Officers as being affiliated with the Tampa Police Department ("TPD") and a detective with TPD. (Doc. 1 at ¶37).

against the City of St. Petersburg because Plaintiffs allege both the John Doe Officers and Chief Harmon were acting in their respective official capacities. <u>Busby</u>, 931 F.2d at 776.  Additionally, to keep the City of St. Petersburg, Chief Harmon, and the John Doe Officers as Defendants and sued in their official capacity, would be redundant and could confuse the jury. <u>Id.</u>  Therefore, because Plaintiffs have alleged the "John Doe officers" and Chief Harmon were acting in their respective official capacities, and Plaintiffs have brought functionally equivalent causes of action against the municipality, the causes of action as they relate to the "John Doe officers" and Chief Harmon, in their official capacities, are **DISMISSED WITH PREJUDICE.**

### B.  Supervisor Liability

Chief Charles Harmon could not be held liable under § 1983 for unconstitutional subordinate acts on the basis of respondeat superior or vicarious liability.  <u>Keith v. Dekalb Cnty., Ga.</u>, 749 F.3d 1034, 1047 (11th Cir. 2014).   To hold a supervisor liable, a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation.   <u>Id</u>. The Eleventh Circuit stated causal connections as:

> "The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy ... result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."

<u>Id</u>. at 1048 (citing to <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003)).

Plaintiff alleges that, on a continuing basis, Chief Harmon failed to instruct, supervise, control, and discipline police officers in their duties to refrain from "unlawfully and maliciously (1) harassing a citizen, (2) imprisoning and prosecuting a citizen, (3) using unreasonable excessive

force, (4) conspiring to violate the rights, privileges and immunities of a citizen, and (5) the deprivation of those rights." (Doc. 1 at ¶38).

The Plaintiffs have an obligation to provide grounds of their entitlement to relief that are more than merely labels and conclusions, and a formulaic recitation of the elements. <u>Twombly</u>, 550 U.S. at 570. The standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is extremely rigorous. <u>Cottone</u>, 236 F.3d at 1360. Therefore, the aforementioned allegations are not pled in a factual manner that would give plausible rise to entitlement of relief. Plaintiffs do not meet the rigid standards explained in <u>Cottone</u>, and mere conclusions or reciting the elements cannot suffice.

## II. 42 U.S.C. § 1983 Municipal Liability Claim Against City of St. Petersburg

### A. Deliberate Indifference and Failure to Train

Plaintiffs allege that inaction by a public agency or person is sufficient participation in a subordinate's misconduct to make the agency or person liable in a suit under § 1983 where the policymaking level at the agency has deliberately decided to take no action, and thus in effect condone the misconduct and adopt it as the agency's unofficial policy. (Doc. 8) (citing to <u>City of Canton v. Harris</u>, 489 U.S. 378 (1989)). In <u>Canton</u>, the Supreme Court importantly stated "[w]here…a claim of municipal liability is predicated upon a failure to act, the requisite degree of fault must be shown by proof of a background of events and circumstances which establish that the "policy of inaction" is the functional equivalent of a decision by the city itself to violate the Constitution." <u>Id.</u> at 395.

In the instant case, Plaintiffs allege the City of St. Petersburg "should have known" and "exhibited deliberate indifference," yet failed to demonstrate what facts, background of events, and circumstances would establish this "policy of inaction." (Doc.1 at ¶48). Plaintiffs only allege

Case No. 8:14-CV-3099-T-17-TBM

one event (the instant case), which does not fall within the Court's established proper and rigid guidelines to determine whether the City of St. Petersburg is on notice of the alleged unconstitutional practices or customs the officers employed.  "[T]he need for training may not be obvious from the outset, but a pattern of constitutional violations could put the municipality on notice that its officers confront the particular situation on a regular basis, and that they often react in a manner contrary to constitutional requirements." Canton, 489 U.S. at 397.

"Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality can the failure be properly thought of as an actionable city policy." Id. at 379.  Plaintiff's Counts II and III are repetitive and reiterate the City of St. Petersburg failed to properly train or supervise its subordinates. Plaintiff's Counts II and III also fail to properly plead these allegations with factual sufficiency.  Consistent with Canton, Plaintiffs must show the event or circumstance was not an isolated act a sole employee committed.  Id. at 399.  Based upon the single alleged incident, the claim is not sufficient to survive dismissal.  See Id.

 Furthermore, Plaintiffs did not plead under the narrow and limited circumstances which create municipal liability.  Plaintiff must allege more than bare conclusions to demonstrate the City of St. Petersburg's: 1) training program is or was inadequate; 2) training program can justifiably be said to represent "city policy;" and 3) this city policy resulted in a violation of constitutional rights.  Id. at 390.   Therefore, the current Complaint lacks facts necessary to show the City of St. Petersburg demonstrated deliberate indifference and a failure to properly train its officers.

### B.  Shotgun Pleading

 The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions.  Strategic Income

Case No. 8:14-CV-3099-T-17-TBM

Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002).  In the instant case, the Plaintiff's Complaint incorporates three separate counts, in which (except for Count I) each count references the previous allegations of the preceding count.  (Doc. 1). Plaintiff's Complaint is considered a shotgun complaint and fails to meet pleading requirements.

Consequently, in ruling on the sufficiency of a claim, the Court must sift out the irrelevancies, a task that can be quite onerous. Id.  Shotgun pleadings lessen the time and resources the court has available to reach and dispose of cases and litigants waiting to be heard.  Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 982 (11th Cir. 2008).  The time a court spends managing litigation framed by shotgun pleadings should be devoted to other cases waiting to be heard.  Therefore, Plaintiff will need to amend Complaint to exclude all shotgun pleas.

Accordingly, it is **ORDERED** that Defendant's Motion to Dismiss is **GRANTED in PART**.  Count I of the Complaint is **DISMISSED WITH PREJUDICE** insofar as it relates to the John Doe Officers and Charles Harmon in their official capacities.  Counts II and III of the Complaint are dismissed **WITHOUT PREJUDICE**, and Plaintiffs are granted leave to file an amended complaint on or before June 15, 2015.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 3d day of June, 2015.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:      All Counsel and Parties of Record